738 S.E.2d 473

James David **FARMER**, Respondent,

v.

**FLORENCE COUNTY SHERIFF'S OFFICE**, Petitioner.

Appellate Case No. 2011–183126.

No. 27226.

Supreme Court of South Carolina.

Heard Dec. 6, 2012.

Decided Feb. 27, 2013.

608

D. Malloy McEachin, Jr., of McEachin & McEachin, P.A., of Florence, for Petitioner.

Patrick James McLaughlin, of Wukela Law Office, of Florence, for Respondent.

Justice PLEICONES.

We granted certiorari to review a Court of Appeals' opinion which construed a counterfeit goods statute [1] in the context of an owner's (respondent's) suit to have the seized goods returned. *Farmer v. Florence Cty. Sheriff's Office*, 390 S.C. 358, 701 S.E.2d 48 (Ct.App.2010). We now vacate that opinion, and hold the circuit court erred in failing to dismiss respondent's suit.

---

1. S.C.Code Ann. § 39–15–1195 (Supp.2009).

## FACTS

Respondent operated a retail store in Florence County. On August 30, 2007, Florence County Sheriff's Office (petitioner) executed a search warrant and seized the store's inventory, consisting of clothing, shoes, movie DVDs, and music CDs. Respondent was subsequently indicted in January 2008 for one count of trafficking in counterfeit goods in violation of S.C.Code Ann. § 39–15–1190 and one count of illegal distribution of recordings in violation of S.C.Code Ann. §§ 16–11–930 and–940 (2003). On January 23, 2008, respondent pled guilty to illegally distributing not more than 25 audiotapes or more than 10 videos in violation of § 16–11–940(C) and the counterfeit goods indictment was dismissed.

In early February 2008, respondent's attorney wrote a letter to petitioner seeking return of the allegedly counterfeit goods. In March 2008, counsel sent a second letter.

Respondent sued petitioner on May 30, 2008, approximately nine months after the goods were seized (August 30, 2007), and approximately four months after respondent pled guilty to piracy and the counterfeit goods charge was dismissed (January 23, 2008). Respondent's complaint alleged:

(1) negligence per se for failing to initiate forfeiture proceedings within a "reasonable time" as provided by § 39–15–1195(B);

(2) negligence in breaching a "heightened duty" to return the goods in a timely manner;

(3) conversion; and

(4) civil conspiracy among petitioner's agents.

Respondent sought special, actual, consequential, and punitive damages, as well as lost profits and interest.

Petitioner answered, alleging among other things that the complaint failed to state a cause of action, that it was immune under the Tort Claims Act (TCA), that respondent had not exhausted his administrative remedies, and that it had not been negligent but in any case, respondent's comparative negligence exceeded that of petitioner. Respondent filed a motion for summary judgment, seeking return of the counterfeit goods and special damages in the form of lost profits and

interest thereon. Petitioner subsequently filed its own summary judgment motion.

The circuit court heard arguments on the summary judgment motions and asked each party to prepare a proposed order. The judge eventually signed an order that did not grant either party the summary judgment it sought, but represented what the trial judge deemed "obviously a reasonable compromise." The order required petitioner to return the alleged counterfeit goods finding petitioner "simply cannot hold [respondent's] property unless it is being held for use in a criminal proceeding." The order cautioned respondent about criminal charges if the goods are in fact counterfeit, and declined any damages hearing if the goods "are returned in substantially the same condition as when seized." The other causes of action were dismissed, the court specifically stating, "the applicability of the [TCA] which remedy [respondent] should pursue, etc., are not mentioned." Both petitioner and respondent appealed.

On appeal, the Court of Appeals affirmed the requirement that petitioner return the goods to respondent, and remanded the question whether petitioner was entitled to summary judgment on respondent's "private causes of action." We granted petitioner's request for a writ of certiorari.

## ISSUE

Did the lower courts err in not dismissing respondent's suit?

## ANALYSIS

■ Since this case presents a novel statutory interpretation question, we begin with a review of the statutory scheme applicable to the facts of this case.

Section 39-15-1195 is titled "Seizure and forfeiture; storage and maintenance of seized property; reports to prosecuting agencies; return of seized items." Subsection A provides that upon a violation of § 39-15-1190, which prohibits possession, transportation or distribution of counterfeit property, "all items bearing the counterfeit mark" are "subject to seizure by and forfeiture to any law enforcement agency . . . ." § 39-15-1195(A)(1). Property subject to forfeiture may be seized by

the department having authority upon a warrant issued by a court having jurisdiction over the property. § 39–15–1195(B). The law enforcement agency seizing the property is deemed to have custody of the property [§ 39–15–1195(D) ] which it must take reasonable steps to maintain [§ 39–15–1195(F) ], and the agency must make a report of the items seized to the "appropriate prosecution agency" "within 10 days or a reasonable period of time after the seizure." § 39–15–1195(G).

Thus, under § 39–15–1195, petitioner had the duty to take reasonable steps to maintain the property seized from respondent's store, and to make a timely report to the "appropriate prosecution agency." § 39–15–1195(F) and (G). There is no allegation by respondent that petitioner breached either duty. Further, while petitioner is deemed to have custody of the property, the property is not subject to replevin.[2] § 39–15–1195(D). The seized property is "subject only to the orders of the court having jurisdiction over the forfeiture proceedings." § 39–15–1195(D). "Proceedings pursuant to Section 44–33–530 regarding forfeiture and disposition must be instituted within a reasonable time with regard to the seized property." § 39–15–1195(C).

Section 44–53–530(a) provides in relevant part:

Forfeiture of property must be accomplished by petition of the Attorney General or his designee or the circuit solicitor or his designee to the court of common pleas for the jurisdiction where the items were seized. The petition must be submitted to the court within a reasonable time period following seizure and shall set forth the facts upon which the seizure was made. The petition shall describe the property and include the names of all owners of record and lienholders of record.... A copy of the petition must be sent to each law enforcement agency which has notified the petitioner of its involvement in effecting the seizure. Notice of hearing or rule to show cause must be directed to all persons with interests in the property listed in the petition,

2. "Replevin was an action to recover the possession of specific chattels, together with damages for their unlawful detention. Trover was an action for damages arising out of the unlawful conversion of personal property." *Reynolds v. Philips,* 72 S.C. 32, 51 S.E. 523 (1905). The claim and delivery statutes (now codified at S.C.Code Ann. §§ 15–69–10 et seq.) combine trover and replevin. *Id.*

including law enforcement agencies which have notified the petitioner of their involvement in effecting the seizure. Owners of record and lienholders of record may be served by certified mail, to the last known address as appears in the records of the governmental agency which records the title or lien.

The judge shall determine whether the property is subject to forfeiture and order the forfeiture confirmed. . . .

Since respondent's goods were seized in Florence County, the Florence County court of common pleas has jurisdiction over any forfeiture-related proceedings. § 39–15–1195(D); § 44–53–320(a).

Petitioner argues that while it has custody of respondent's seized property, the obligation to initiate a forfeiture action in a reasonable time rests with "the Attorney General or his designee or the circuit solicitor or his designee" and not with the law enforcement agency that executed the warrant. § 44–53–530(a). We agree. Further, the Court of Appeals acknowledged as much, relying in its opinion on § 44–53–530. The opinion, however, then states that § 39–15–1195(C) requires law enforcement to institute forfeiture proceedings "within a reasonable time" and concludes petitioner did not "discharge[e] its statutorily mandated responsibility to commence forfeiture proceedings in a timely manner."

We agree with petitioner that it has no statutory authority, much less "mandated responsibility" to commence forfeiture proceedings. While § 39–15–1195(C) does not explicitly identify the party who is to bring the forfeiture proceedings, it does state, "proceedings pursuant to Section 44–53–530 regarding forfeiture and disposition must be instituted within a reasonable time." As § 44–53–530(a) states, and as the Court of Appeals initially recognized, forfeiture proceedings are brought by "the appropriate prosecution authority" with notice to law enforcement. The Court of Appeals erred in finding petitioner breached a statutory duty by failing to bring forfeiture proceedings.

■ The Court of Appeals also held that petitioner's failure to fulfill its duty to institute a forfeiture proceeding within a reasonable time relieved respondent of his "option" to bring

his own action under § 39–15–1195(H)(1). This subsection provides:

An owner may apply to the court of common pleas for the return of an item seized pursuant to the provisions of this chapter. Notice of hearing or rule to show cause accompanied by a copy of the application must be directed to all persons and agencies entitled to notice as provided in Section 44–53–530. If the court denies the application, the hearing may proceed as a forfeiture hearing held pursuant to the provisions of Section 44–53–530.

We find that (H) does not represent an "option," but is instead the sole method by which an owner may demand that the prosecuting agency either have law enforcement return the property or institute a forfeiture proceeding.

 Respondent contends that a full reading of § 39–15–1195(H) indicates it only applies to innocent owners. Specifically, respondent relies on (H)(2), which allows a court to return a seized item if the owner demonstrates by a preponderance of evidence that he was "innocent" with respect to the use of the property. The threshold question, whether in a forfeiture initiated by the responsible prosecutorial agency or in an owner's § 39–15–1195(H) action, is whether the property is subject to forfeiture. At that juncture, the determination is made whether the property is contraband *per se* or derivative contraband. *See Mims Amusement Co. v. SLED,* 366 S.C. 141, 621 S.E.2d 344 (2005) (contraband *per se* is illegal to possess and therefore not susceptible of ownership while derivative contraband is ordinarily legal to possess but forfeitable if an instrumentality of a crime). Only if contraband is derivative is the owner's knowledge relevant under (H)(2) because only derivative contraband can be returned to an innocent owner. Subsection H was available to respondent.

 Finally, it appears that the Court of Appeals' decision was driven in large part by its concerns for respondent's due process rights. As petitioner rightly points out, respondent never asserted any constitutional deprivation either at the circuit court or in his appellate court briefs. While courts

should construe statutes as constitutional if possible, there was no reason to reach the due process question here.[3]

Petitioner also argues that the circuit court erred when it stated that law enforcement "simply cannot hold [respondent's] property unless it is being held for use in a criminal proceeding" and that the Court of Appeals compounded the error by repeating this statement without comment. We agree. Seized property can be held for other than criminal prosecution purposes, as civil forfeiture is available even where no criminal proceeding is contemplated. Moreover, even if a criminal defendant is acquitted or charges are dropped, contraband *per se* (e.g., illegal drugs, counterfeit goods) is never returnable.

## CONCLUSION

Respondent's remedy under these circumstances is found in § 39–15–1195(H). Instead of exercising that option, he chose instead to bring this replevin action, a remedy specifically forbidden by § 39–15–1195(D). The circuit court erred in not dismissing respondent's suit, and the Court of Appeals compounded the error. We have been informed that petitioner no longer has custody of the seized property, and express our disappointment that it failed to safeguard the property during the pendency of this matter. Since respondent's attorney

---

**3.** While not properly before the Court, we briefly address the issue in order to dispel any uncertainty created by the Court of Appeals. Were § 39–15–1195 and § 44–53–530 actually subjected to a due process challenge, it appears that both would survive such a challenge by the owner of the seized property. This Court has held the most due process requires is a post-seizure opportunity for an innocent owner "to come forward and show, if he can, why the *res* should not be forfeited...." *State v. 192 Coin–Operated Video Game Machines*, 338 S.C. 176, 525 S.E.2d 872 (2000) (internal citation omitted). Further, whether a prosecutorial delay in instituting forfeiture proceedings violates the owner's due process right is a fact-intensive inquiry subject to the same considerations applicable to a constitutional speedy trial claim. *United States v. $8,850*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) (length of delay, reason for delay, owner's assertion of right, and prejudice). Obviously no due process claim was made here. Moreover, the Court of Appeals erred in relying on two federal cases involving a statute that provided no owner-initiated option, and further misread *Moore v. Timmerman*, 276 S.C. 104, 276 S.E.2d 290 (1984), which merely reiterates that an owner of seized property must have an opportunity to be heard.

acknowledged at oral argument that respondent could not establish that the seized goods were not counterfeit within the meaning of § 39–15–1190, however, we need not address whether he would otherwise have a remedy against petitioner. For the reasons given above, the decision of the Court of Appeals is vacated, and the decision of the circuit court reversed.

**VACATED AND REVERSED.**

TOAL, C.J., BEATTY and KITTREGDE, JJ., concur.

HEARN, J., concurs in part and dissents in part.

Justice HEARN, concurring.

Respectfully, I concur in part and dissent in part. While I wholeheartedly agree with the majority's consideration of the merits, I believe it is not necessary to vacate the court of appeal's opinion and would merely reverse.